IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA

v.

KIA A. PLAYER,

      *Defendant.*

## STATEMENT OF FACTS

The United States and the defendant, Kia A. Player (hereinafter, "the defendant"), stipulate that the allegations contained in the Criminal Information and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt by competent and admissible evidence:

1. On or about July 26, 2022, the City of Richmond published a notice of funding availability solicitation, inviting entities to submit applications for building inclement weather shelters for homeless people in the Richmond metropolitan area. Applications were due by August 25, 2022, and applicants could seek up to $3 million under the program. Funds for the program came from federal dollars under the American Rescue Plan Act and U.S. Department of Housing and Urban Development ("HUD") administered Community Development Block Grants. The solicitation stated that the City of Richmond "is using the funding solely for the implementation and operation of an Inclement Weather Shelter."

2. On or about August 25, 2022, KIA A. PLAYER, defendant herein, bid on the solicitation, along with Individual 1. The defendant proposed to provide a women and children-focused homeless shelter in Richmond, Virginia to provide refuge from inclement weather. The defendant represented in her bid documents that she was forming a nonprofit organization to

1

administer the shelter known as "Project 2807" and "RVA Sister's Keeper." Thereafter, on or about August 29, 2022, PLAYER and Individual 1 registered RVA Sister's Keeper as a Virginia Nonstock Corporation with the Virginia State Corporation Commission and thereafter designated RVA Sister's Keeper (hereafter, "RVASK") as a non-profit organization under Section 501(c)(3) of the Internal Revenue Code. PLAYER was RVASK's Registered Agent and Director.

3. RVASK was in operation from in or about October 2022 and continuing through in or about April 2023 in Richmond, Virginia, within the Eastern District of Virginia. While it was in operation, RVASK provided up to 40 beds for women and children, nightly dinner, and grab-and-go breakfast.

4. On or about December 12, 2022, the Richmond City Council adopted an ordinance that increased city revenues from real estate taxes to pay for, among other things, a $908,422 appropriation for RVASK. From 2022 through 2023, RVASK received at least $995,444 in governmental funding from HUD and the City of Richmond.

5. At all times relevant to the Criminal Information, PLAYER was a resident of Richmond, Virginia, within the Eastern District of Virginia.

## The Scheme and Artifice to Defraud

6. Beginning at least on or about August 25, 2022, and continuing through in or about April 2023, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendant KIA A. PLAYER, and others known and unknown, did knowingly, unlawfully, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses and promises, and for the purpose of executing and attempting to execute this scheme, caused the transmission of signs, signals, and writings in interstate commerce.

## Purpose of the Scheme and Artifice to Defraud

7.     The purpose of the scheme was for PLAYER and co-conspirators, known and unknown, to unlawfully enrich themselves using RVASK by fabricating and falsifying invoices to fraudulently induce the City of Richmond to disburse funds to which RVASK was not entitled and to spend those funds on personal expenses.

## The Manner and Means of the Scheme and Artifice to Defraud

8.     The manner and means of the scheme and artifice to defraud included, but were not limited to, the following.

9.     Over the course of the scheme, PLAYER generated a total of at least 35 falsified invoices purporting to show costs paid for the operation of the RVASK homeless shelter. In truth and in fact, as PLAYER well knew, these invoices were fabricated and the purported costs were inflated. PLAYER submitted these fabricated and inflated invoices to the City of Richmond on numerous occasions to fraudulently obtain reimbursements from the City of Richmond to which she was not entitled.

    a. As an illustrative example, PLAYER fabricated at least 21 separate invoices purporting to show that RVASK paid an entity called "VCM Catering Services" to provide breakfast and dinner at the homeless shelter. Yet, VCM Catering Services was a fictitious business entity. In truth, PLAYER hired her mother, Individual 2, to provide breakfast and dinner for the homeless people of RVASK, paying $4,000 per month to Individual 2 as compensation. While Individual 2 was working for RVASK, Individual 2 was also a cafeteria manager at a Richmond City public school. On occasion, Individual 2 provided to RVASK food taken

3

from the public school's cafeteria – food that was procured with public funds. PLAYER fraudulently submitted these fabricated invoices for the non-existent VCM Catering Services to the City of Richmond, causing it to reimburse at least $170,869 for payments purportedly made to VCM Catering Services.

b. As another illustrative example, PLAYER fabricated documentation purporting to show that RVASK had paid Moizelles Cleaners, a laundry company, for wash and fold services on at least 10 separate occasions for $10,120 in total. In truth and in fact, the documentation was forged. Moizelles provided laundry services to RVASK on only three separate occasions, for which PLAYER paid Moizelles a total of $2,021. PLAYER fraudulently submitted this invoice to the City of Richmond, causing it to reimburse at least $10,120 for payments purportedly made to Moizelles Cleaners.

c. As another illustrative example, PLAYER fabricated a document purporting to show that RVASK paid Go-Forth Pest Control, a pest control company, $1,500 for bed bug treatment. In truth and in fact, Go-Forth Pest Control never performed any services for RVASK, and PLAYER fabricated the invoice. PLAYER fraudulently submitted this fabricated invoice for non-existent treatment services to the City of Richmond, causing it to reimburse $1,500 for payments purportedly made to Go-Forth Pest Control.

d. As another illustrative example, PLAYER fabricated at least 10 separate invoices from Evelyn's Cleaning, LLC, a cleaning company, purporting to show that RVASK paid $150 per day for cleaning from February through April 2023. In truth, RVASK only used Evelyn's Cleaning on a single occasion for a cleaning, paying that company approximately $405. RVASK staff was primarily responsible for cleaning the RVASK facilities. PLAYER fraudulently submitted these fabricated invoices to the City of Richmond, causing it to reimburse at least $10,500 for payments purportedly made to Evelyn's Cleaning, LLC for non-existent services at the homeless shelter.

e. As another illustrative example, PLAYER fabricated an invoice from Eddy's Painting, LLC, a contractor company, purporting to show that RVASK paid Eddy's Painting $47,975 for various construction projects. Many of the work items listed on the invoice were never performed, including: (1) repairs to the shelter's roof; (2) upgrades to the shelter's plumbing and shower; and (3) installation of exterior lighting. In fact, at all times that RVASK was in operation, the shelter's roof leaked. Moreover, there was only one shower and two bathrooms in operation at RVASK, neither of which were upgraded, for the use of the approximately 40 homeless people who could be admitted to the shelter at a time. On or about March 2, 2023, PLAYER sent this fabricated and inflated invoice to the City of Richmond. Thereafter, on or about March 10, 2023, PLAYER sent an email to the City of Richmond stating: "Please see payment

submitted for renovations of the shelter." The attachment included a payment receipt purporting to show that Eddy's Painting, LLC was paid $47,975. PLAYER fraudulently submitted these documents to the City of Richmond, causing it to disburse at least $47,975.

10. PLAYER funneled $25,000 in fraudulently-obtained funds from RVASK through a corporate entity called MH Resource Solutions, LLC, a Virginia Limited Liability Company for which PLAYER was the registered agent. Thereafter, PLAYER transferred $20,950 of these fraud proceeds from MH Resource Solutions, LLC to PLAYER's Bank of America Account ending in -6614, which PLAYER co-owned with her mother, Individual 2. At no point did PLAYER disclose to the City of Richmond that MH Resource Solutions, LLC was a nominee of PLAYER's. In all, after subtracting the salary that PLAYER was entitled to receive (which PLAYER disclosed to the City of Richmond in RVASK invoices), PLAYER funneled at least $68,893.05 of fraud proceeds from RVASK to other accounts controlled by PLAYER.

11. PLAYER utilized the fraud proceeds for various personal spending, including:
   a. Spending $403 at River City Tattoo in Richmond, Virginia for a tattoo.
   b. Spending $663 with United Airlines, $635 with TAP Air Portugal, and $163 with American Airlines on various airline tickets.
   c. Spending $450 on a luxury Caribbean ferry ride in Miami Beach, Florida.
   d. Spending $2,750 across at least six different occasions for veterinary services.
   e. Spending $609 at West End Antique Mall, an antique store in Richmond, Virginia.
   f. Spending $1,831 on three different occasions at Anthropologie, a retailer.

6

      g. Spending $1,789 at furniture stores across three separate transactions.

      h. Spending $199 at a restaurant in Miami Beach, Florida.

12. In all, PLAYER and her co-conspirators inflated the costs of the provided goods and services provided, causing $199,163 in actual losses to HUD and the City of Richmond.

### Execution of the Scheme and Artifice to Defraud

13. On or about the below-listed date, within the Eastern District of Virginia and elsewhere, the defendant, KIA A. PLAYER, for the purpose of executing the above-described scheme and artifice to defraud, and attempting to do so, knowingly transmitted and caused to be transmitted by wire communication in interstate and foreign commerce, the following wire transmission:

| Count | On or About Date | Wire Transmission |
|---|---|---|
| 1 | March 27, 2023 | PLAYER sent an email to the City of Richmond containing fabricated and falsified invoices for shelter operations for RVA Sister's Keeper. The email caused an electronic wire from Google email servers located outside the Commonwealth of Virginia to City of Richmond email servers within the Eastern District of Virginia. |

* * *

14. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

15. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

LINDSEY HALLIGAN
United States Attorney

By: _____  11/18/2025
Avi Panth
Assistant United States Attorney

8

After consulting with my attorney, I, KIA A. PLAYER, hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
KIA A. PLAYER

I am Charles E. James, Jr., defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Charles E. James, Jr., Esq.
Attorney for KIA A. PLAYER