IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:25-cr-00146 |
| ) | |
| KIA A. PLAYER, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S
MOTION FOR UPWARD VARIANCE**

COMES NOW, Kia A. Player ("Player"), by counsel, and respectfully requests that this Court overrule the Government's objection to the Pre-Sentence Report ("PSR") and deny the Government's Motion for an Upward Variance.

**Argument**

The Government seeks to impose an additional 6 points to the offense level in the PSR through an objection and a Motion for an Upward Variance. Specifically, the Government seeks the application of a 2-offense level enhancement under U.S.S.G. § 2B1.1(b)(9)(A); a 2-offense level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i); and a 2-offense level enhancement under U.S.S.G. § 3A1.1(b)(1). Player opposes the imposition of sentencing enhancements under any of these sections, as the Government has not met its affirmative burden and none of the enhancements would be appropriate.

The Government's central argument is that the "mechanics of the fraud" have resulted in a lower sentencing guideline range. However, the "mechanics of the fraud" are central to the offense and cannot be side-stepped or ignored to reach an unjust result. Applying the requested enhancements would improperly inflate Player's sentence.

1

I.      U.S.S.G. § 2B1.1(b)(9)(A)

The Government has objected to the PSR, arguing that this offense involved a "misrepresentation that the defendant was acting on behalf of a charitable . . . organization." The Government relied primarily on *Marcum* and *Aramony* for the proposition that misrepresenting that an individual is conducting an activity wholly on behalf of a charity is sufficient grounds for the enhancement.  Player did operate, with Individual 1, an entity that in fact provided contracted services.  The Statement of Facts and the underlying investigation do not support the Government's current assertion that the unhoused were no provided food and shelter as required by the contract.  It can be and is a fact that Player inflated certain invoices and provided the contracted services to the unhoused.  These two things were both true during the few months the shelter was in operation. Even if the Government's view of the alleged misrepresentation were true, there still must be a nexus between the offense and the misrepresentation.

The fact that Player was operating an inclement weather homeless shelter does not automatically make this enhancement applicable. It is important that the "misstatements" were made to a government entity and that the charitable nature of homeless shelters was not used to convince the government to make overpayments. Put differently, the fact that a charity provided the services is immaterial to the acknowledged fraud and was not a condition precedent for the contract, the services, or payment.  It is happenstance that the program administered by Player was "charitable," as her wrongdoing could be done with any government grant or contract.  Her conduct is more akin to a government contractor who inflated the costs of goods or services than it is to an entity that held itself out to the public as a charity.

The common denominator in cases applying the enhancement is that the association with a charity or government agency assisted the defendant in committing the crime. In *Marcum*, the defendant "misrepresented ***to the public*** that he was conducting the bingo games **wholly on behalf**

2

**of the [charity]**, a charitable organization." 16 F.3d 599, 603 (4th Cir. 1994) (emphasis added). The public participated in the bingo games *because* they thought the money was going to charity. In *Aramony*, the defendant was the chief executive officer of the United Way of America and "misrepresent[ed] that he was acting wholly on behalf of UWA *in soliciting donations*." 166 F.3d 655, 664 (4th Cir. 1999) (emphasis added). Again, the public donated money *because* they thought it was going to charity.

The remaining cases within the Fourth Circuit are no different. *See, e.g., United States v. White*, 850 F.3d 667, 674-75 (4th Cir. 2017) (the defendant's misrepresentation about working with the IRS induced the victim to make payments); *United States v. Howard*, 621 Fed. App'x 243, 243-44 (4th Cir. 2015) (defendant's misrepresentation that he was working for the post office enabled him to steal post office property); *United States v. Loughry*, 2019 WL 660353 (S.D.W. Va. Feb. 11, 2019) (defendant's misrepresentation about using an agency vehicle for agency purposes enabled him to get reimbursement from a non-profit conference).

Counsel has been unable to find a single case in which the "misrepresentation" was made to a government entity. This is unsurprising given the rationale behind the enhancement. The Sentencing Guidelines explain that "[u]se of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who *take advantage of victims' trust* in government or law enforcement agencies *or the generosity and charitable motives of victims*." U.S.S.G. § 2B1.1(b)(9)(A) background (emphasis added).

Here, the "charitable" nature of the homeless shelter was irrelevant. The City of Richmond (the "City") did not pay the invoices out of the goodness of its heart, it paid the invoices because it had an arm's length commercial contract with Player.[1] The City was not any more or less likely to

---

[1] It is notable that the City's solicitation did not require that applicants be non-profits, that RVASK had not been founded (let alone founded as a charitable organization) at the time of the application, and that RVASK had not been approved as

3

pay Player's invoices just because the invoices were for a homeless shelter. RVASK was, in this regard, simply a vendor. For this reason, Player's relationship was not unlike any other service provider who received compensation for outsourced goods or services. Player just happened to contract for a charitable program but had she received a grant for a non-charitable purpose the fraudulent scheme would have been the same.

## II.     U.S.S.G. § 2B1.1(b)(2)(A)(i)

The Government argues that there has been harm to more than 10 victims, as the Government includes every individual that benefitted from the shelter's services as a victim. This offense had only two legally cognizable victims: the City and HUD. To allege that an unhoused individual, who was provided meals and shelter, was a victim of Player overcharging the City is unsupported in law or in fact. As such, the enhancement would not be appropriate.

The application notes define victim as "any person who sustained any part of the ***actual loss***" or "any individual who sustained ***bodily injury*** as a result of the offense." U.S.S.G. § 2B1.1 Application Note 1 (emphasis added). "Actual loss" means the reasonably foreseeable ***pecuniary*** harm that resulted from the offense, and "pecuniary harm" is defined as monetary and excludes "emotional distress, harm to reputation, or other non-economic harm." U.S.S.G. § 2B1.1(b)(1)(C); *see also United States v. Smith*, 751 F.3d 107, 118 (3d Cir. 2014).

The users of the shelter did not suffer any pecuniary harm or bodily injury and thus are not victims of the offense. No actual harm is present, and any alleged harm suffered by the users of the shelter is too attenuated and generalized to render each person a victim. The Sentencing Guidelines do not support the Government's impermissible expansion advanced in its pleadings. Even an "imperfect" application of the Sentencing Guidelines would be unlawful. Under the Government's

---

a charitable entity by the IRS. These facts all show that the contract was an arms' length commercial transaction independent of the applicant's charitable status.

theory, essentially all government program fraud would have more than 10 victims, many of them vulnerable, even where the actual victim is the governmental entity. *See* PSR ¶ 16 (listing the City and HUD as the only victims).  To apply the Government's logic to other cases, every PPP fraud case would include every PPP applicant and/or taxpayer as a victim.  Every defense contractor who inflated an invoice would contend with thousands of "victims" and not the branch that was overcharged.

### III.   U.S.S.G. § 3A1.1(b)(1)

The Government contends that the victims of the fraud were "vulnerable victims."  This is incorrect for at least two reasons.  First, the users of the shelter were not "victims" of the offense as defined. Second, even if the users of the shelter were considered "victims," there is no link between their vulnerability and the offense.  Therefore, a vulnerable victim enhancement would be improper. The Government does not allege any causal connection between Player inflating the cost of a repair with a harm to a client who received services from RVASK and Player.  There is no evidence that a false reimbursement, for a good or service already provided, deprived a resident whatsoever. Similarly, there is no evidence that a false claim deprived that same resident of any good or service in the future.

As stated above, "victims" are confined to individuals or entities that suffered pecuniary harm or bodily injury resulting from the offense, and the users of the shelter suffered neither. Furthermore, for the enhancement to apply, there must be link between vulnerability and the susceptibility to the criminal conduct. *United States v. Lawson*, 128 F.4th 243, 250-51 (4th Cir. 2025); *United States v. Luong*, 125 F.4th 147, 156 (4th Cir. 2025) ("[T]he victim must be more susceptible to abuse from a perpetrator than most other potential victims of the particular offense."); *see also United States v. Blake*, 81 F.3d 498, 504 (4th Cir. 1996) (noting that membership in a susceptible class, "without more, does not justify application of the vulnerable victim

5

enhancement"). For example, the elderly are often considered vulnerable victims of scams because they are less adept at using technology and their reasoning faculties may have declined. *See id.* There is a clear link between the vulnerability and the offense.

The victims, as defined in the Guidelines, are government agencies. Just because the intended recipients of a government program may fall within a susceptible class does not make them vulnerable victims. For example, in *United States v. Bolden*, the defendant was convicted of Medicaid fraud while running a nursing home facility. 325 F.3d 471 (4th Cir. 2003). The Government sought to apply the enhancement because the nursing home serviced elderly residents. *Id.* at 501. The court stated, "[w]hile it is indisputable that the residents of Emerald Health were elderly, and many of them likely suffered from both mental and physical ailments, neither the sentencing court nor the PSR found the ***vulnerability*** of Emerald Health's residents to have ***facilitated*** Ms. Bolden's offenses." *Id.* (emphasis added).

Here, there is no link between the vulnerable class and the offense. It is simply irrelevant that the shelter was for individuals in poverty, as that poverty did not make it easier or harder for Player to commit the office.

Furthermore, to establish that someone is a vulnerable victim, there must be some particularized facts. For example, in *United States v. Luong*, the government argued that the victim was vulnerable as a Vietnamese immigrant and pointed to characteristics like cultural respect for family and lack of knowledge of the American legal system. 125 F.4th at 157-58. The Fourth Circuit determined that those characteristics were a "broad assumption about the Victim's vulnerability based upon her membership in a class." *Id.*

Similarly, the Government cannot point to any particularized characteristics of the shelter's users. Instead, the Government and Mayor Avula's letter rely on broad generalizations and assumptions. As such, the Government cannot establish that the users were vulnerable victims during

6

the relatively short time the shelter was in operation.

## Conclusion

For the reasons stated, Player respectfully requests that this Court deny the Government's Motion for an Upward Variance.


Respectfully submitted,

**KIA A. PLAYER**


By: /s/ Charles E. James, Jr.
Charles E. James, Jr. (VSB No. 46310)
WILLIAMS MULLEN, P.C.
200 South 10th Street, Suite 1600
Richmond, VA  23219
Office: 804.420.6529
Fax:    804.420.6507
Email: cjames@williamsmullen.com
*Attorney for Kia A. Player*